IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

HENRY J. BUNCH                                                                                    PLAINTIFF

               v.                            Civil No. 06-5220

SCOTT CRAIG, Cherokee Nation
Federal Marshal's Office; SUPERVISOR
JOHN DOE, Cherokee Nation Federal
Marshal's Office; CHAD SMITH, Chief,
Cherokee Nation; RICK HOYT,
Chief of Police, Fayetteville,
Arkansas; ROBERT ALLEN RILEY,
Fayetteville Police Department; JEREMY
B. GRAMMAR, Fayetteville Police
Department; CHRISTOPHER D. MOAD,
Fayetteville Police Department;
THOMAS E. REED, Fayetteville Police
Department; DEREK F. KRAUSE, Fayetteville
Police Department; NATHANIEL R. COY,
Fayetteville Police Department; and JANET
E. MACRI, Fayetteville Police Department                                           DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Henry J. Bunch, brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. Bunch's complaint was filed in forma pauperis (IFP) subject to a later determination of whether it should be served upon the defendants.

Because the court felt more information was needed on Bunch's claims, he was directed to complete, sign, and return a questionnaire that would serve as an addendum to his complaint (Doc. 5). On December 14, 2006, Bunch filed the addendum (Doc. 7). On December 7, 2006, Bunch filed a motion to amend his complaint (Doc. 6).

-1-

AO72A
(Rev. 8/82)

## I. Background

In the complaint and addendum, Bunch alleges he was arrested on November 14, 2004, in Fayetteville, Arkansas, at a Wal-Mart Super Center. He contends excessive force was used against him during the arrest.

From August 18, 2004, until his arrest on November 14, 2004, Bunch maintains he was acting as an undercover informant for the Cherokee Nation Federal Marshal's Office. *Addendum* at ¶ 5; *Complaint* at page 7. Bunch met with Craig on numerous occasions while doing undercover work for him. *Addendum.* at ¶ 6. These meetings occurred in Oklahoma. *Id.* According to Bunch, during the months of August, September, October and November of 2004, he was personally responsible for numerous drug buys from which arrests and convictions were obtained. *Id.* Bunch asserts he was also responsible for the arrest of numerous methamphetamine cooks in Northeastern Oklahoma. *Id.*

On the date of his arrest, Bunch indicates he was working with Officer Craig to uncover a methamphetamine laboratory and a murder for hire plot. *Addendum* at ¶ 5. According to Bunch, the man behind it all was Marcus Daughtry. *Id.* Before his arrest, Bunch states he had made Craig aware that Daughtry had been robbed of money and methamphetamine and was attempting to hire someone to kill the man who robbed him, Rodger Flynn. *Id.* Daughtry paid Bunch $900 to purchase "sudaphedrine pills and red phostroues" for methamphetamine. *Addendum* at ¶ 5; *Complaint* at page 7-8. Bunch alleges Craig agreed to supply the ingredients. *Id.*

Craig's failure to follow through and provide Bunch with the ingredients was what led up in Bunch's opinion to the chain of events that occurred on November 14, 2004. *Addendum*

at ¶ 5.  As time went by, Bunch indicates he was forced to spend some of the $900 as he could not get back in contact with Craig.  *Complaint* at page 7.

Bunch told Daughtry he had given the $900 for the ingredients to a friend.  *Addendum* at ¶ 5.  On November 14th Bunch alleges Daughtry, accompanied by Brian Webb, "practically forced" his way into Bunch's home demanding that he take a loaded firearm and go find his friend and get the ingredients or give Daughtry his money back.  *Addendum* at ¶ 5; *Complaint* at pages 7-8.   Daughtry instructed Webb to accompany Bunch to make sure he returned.  *Complaint* at page 8.

Bunch states he attempted repeatedly to reach Craig by telephone.  *Addendum* at ¶ 5; *Complaint* at pages 7-8.  Bunch went to Arkansas hoping to buy time while he tried to contact Craig.  *Id.*  If not, Bunch states he planned to buy or steal the ingredients out of absolute necessity.  *Id.*

When they reached Fayetteville, Bunch states they went to the Wal-Mart Super Center on Sixth Street.  *Complaint* at page 8; *Motion to Amend* (Doc. 6) at page 2.  Bunch planned to leave the revolver in the vehicle but Webb refused to allow Bunch to leave it.  *Id.*  Bunch therefore stuck the gun in the rear waist band of his pants.  *Id.*

As he was leaving the store, Bunch states he was confronted by an employee.  *Complaint* at page 8.  Bunch attempted to side-step the employee and walk out.  *Id.*  According to Bunch it was imperative that he not be apprehended and be able to go with Webb back to meet Daughtry so Bunch would know where the methamphetamine cook was taking place.  *Id.*  Additionally, Bunch states the person Daughtry was hiring to kill Flynn was going to be at the location of the cook.  *Id.*

Bunch alleges he was tackled from behind by two Wal-Mart employees, Jarrod L. Nelson and Nathan J. Skelton. *Complaint* at page 8; *Motion to Amend* (Doc. 6) at page 2. Because Bunch was on the pavement with someone on top of him, he states the revolver was gouging him and causing pain. *Complaint* at page 8. For the reason he reached behind him to remove the pistol from his pants. *Id.*

When the employees attempted to take the pistol away from Bunch, he jerked it upward and fired two shots in the air to get them to leave him alone. *Complaint* at page 9. Bunch then got up and left the area and proceeded into a residential area. *Id.*

When the police came, Bunch fired another shot in the air. *Complaint* at page 9. When he realized he was going to be apprehended anyway, Bunch states he laid the gun down and laid on the ground. *Id.*

After he had surrendered and was face down on the ground and handcuffed, Bunch maintains Derek Krause, an officer with the Fayetteville Police Department, "tasered" him in the neck and face several times. *Addendum* at ¶ 4. Bunch then alleges Officer Robert Riley, Jeremy B. Grammar, Christopher Moad, and Thomas Reed then picked him approximately five feet off the ground and body slammed him to the ground. *Id.* Bunch maintains the officers then began to kick, stomp, and beat him with sticks. *Id.* Bunch alleges Nathaniel R. Coy and Janet E. Macri, both officers with the Fayetteville Police Department, stood silent while the other officers brutalized him. *Complaint* at page 6. As a result of the use of force, Bunch contends two of his teeth were broken, his face was swollen, he had two black eyes, his shoulders and neck were dislocated, and he had bruises all over his body. *Addendum* at ¶ 4.

AO72A
(Rev. 8/82)

When he was taken to City Hall, Bunch states he was chained between two benches for five to eight hours. During this time, Bunch states his wrists were cut up from the handcuffs. *Addendum* at ¶ 4. When he asked a female dispatcher if he could use the restroom, Bunch states he was told to "piss on" himself and the trustees had mops to clean it up. *Id.* Bunch asserts he was treated like an animal. *Id.* He also states he was left in a very cold room with no clothes, cover or mattress for about thirty-six hours. *Id.*

Following his arrest, Bunch was charged with aggravated robbery, attempted capital murder, felon in possession of a firearm, theft by receiving, possession of methamphetamine, possession of pseudoephedrine with intent to manufacture methamphetamine, and simultaneous possession of drugs and a firearm. *Addendum* at ¶ 3.

Bunch alleges he was eventually taken to county jail. *Complaint* at page 9. He maintains he was not allowed to use of the phone or have visits for over two weeks. *Id.* When he was allowed to use the phone, Bunch alleges he contacted bail bondsman Chris Lockhart and he contacted Craig. *Id.* at page 10. Craig is alleged to have told Lockhart that he would come to the jail at his "soonest opportunity." *Id.*

Bunch alleges Craig failed to come forward and provide assistance. *Addendum* at ¶ 5; *Complaint* at page 10. Bunch has named Craig's supervisor as a defendant because he failed to properly train Craig so that he would not endanger the life of his informants. *Addendum* at ¶ 5. Bunch has named the Cherokee Nation Chief Chad Smith as a defendant because Bunch is a tribal member and while in the Washington County Detention Center Bunch contacted Smith for assistance and received none. *Id.* Bunch has never met Craig's supervisor or Smith. *Id.* at ¶ 6.

AO72A
(Rev. 8/82)

Bunch was convicted of aggravated robbery, attempted capital murder, felon in possession of a firearm, theft by receiving, possession of methamphetamine, possession of pseudoephedrine with intent to manufacture methamphetamine, and simultaneous possession of drugs and a firearm. *Addendum.* at ¶ 2. He was sentenced to a term of imprisonment in the Arkansas Department of Correction (ADC) on March 15, 2005. *Id.* at ¶ 1. On appeal, the Arkansas Court of Appeals affirmed the judgment with the modification that the aggravated robbery charge must be merged into one of the attempted capital murder charges. *Bunch v. State*, ___ S.W.3d ___, 94 Ark. App. 247 (2006); *Addendum* at ¶ 3.

## II. Discussion

Several of Bunch's claims are subject to dismissal. First, Bunch's claims against Scott Craig, Supervisor John Doe, and Chad Smith are subject to dismissal. With respect to Scott Crain and Supervisor John Doe, we first note that § 1983 provides no right of action against federal officials. A § 1983 complaint must allege that each defendant, acting under color of state law, deprived plaintiff of "rights, privileges or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. *DuBose v. Kelly*, 187 F.3d 999 (8th Cir. 1999). Federal officials do not act under color of state law. *See e.g., Parker v. Boyer*, 93 F.3d 445, 448 (8th Cir. 1996)(§ 1983 redresses only injuries caused by exercise of some right or privilege created by state, by rule of conduct imposed by state, or by person for whom state is responsible); *Gibson v. United States*, 781 F.2d 1334, 1343 (9th Cir.1986) ("Federal officers acting under federal authority are immune from suit under section 1983").

Rather, a claim that a federal official has violated an individual's constitutional rights is considered a *Bivens* claim. *Bivens v. Six Unknown Named Agents of Federal Bureau of*

AO72A
(Rev. 8/82)

*Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). The Supreme Court held in *Bivens* that when "a federal agent acting under color of his authority" violates the Constitution, the agent's victim may recover damages against the agent. *Bivens*, 91 S. Ct. at 2001.

We need not decide if Chad Smith, the Chief of the Cherokee Nation, is subject to suit under § 1983 because this court lacks personal jurisdiction over him, Scott Craig and Supervisor John Doe. Courts must look to the forum state's long-arm statute to determine if the defendants are amendable to service of process, a prerequisite of personal jurisdiction. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 108 (1987). Jurisdiction may be exercised over a nonresident defendant "'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.'" *Romak USA, Inc., v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004)(quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.l3d 1070, 1072 (8th Cir. 2004), *cert. denied,* ___ U.S. ___, 125 S. Ct. 1304, 161 L. Ed. 2d 108 (2005)). "Arkansas' long-arm statute extends jurisdiction over nonresidents to the maximum extent permitted by the Due Process Clause." *Epps v. Stewart Information Services, Corp*., 327 F.3d 642, 647 (8th Cir. 2003); see Ark. Code Ann. § 16-4-101 (Repl. 1999). Thus, the single question is whether the exercise of personal jurisdiction is consistent with the due process clause. *See, Burlington Industries, Inc. v. Maples Industries, Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996); *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 921 (8th Cir. 1995).

"Due process requires sufficient 'minimum contacts' between the defendant and the forum state so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Epps*, 327 F.3d at 647 (*quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). "[I]t is essential in each case that there be some act by which the

AO72A
(Rev. 8/82)

defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Defendant's contacts must be more than 'random, fortuitous, or attenuated.'" *Epps*, 327 F.3d at 648 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen,* 444 U.S. at 297.

"Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable time immediately prior to the filing of the lawsuit." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)(citation omitted). The Eighth Circuit has set forth five criteria to be considered in determining whether a defendant has minimum contacts with the forum state. *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)(*citing Land-O-Nod Co. v. Bassett Furniture Indus., Inc.,* 708 F.2d 1338, 1340 (8th Cir. 1983)). These factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Id*. The first three of these factors are of "primary importance" in determining "the sufficiency of defendant's contacts." *Id. See also Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1073-74 (8th Cir. 2004) (reiterating same five factors and instructing courts to consider them), *cert. denied,* ___ U.S. ___, 125 S. Ct. 1304, 161 L. Ed. 2d 108 (2005).

The Eighth Circuit has also "elaborated on the third factor–the relationship of the cause of action to the contacts–to distinguish between specific and general jurisdiction." *Burlington Industries*, 97 F.3d at 1102 (citations omitted). "Specific jurisdiction refers to jurisdiction over

causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Id.* at 1103 (citations omitted).

The factors must not be applied mechanically; they are not a "slide rule by which fundamental fairness can be ascertained with mathematical precision." *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 226 (8th Cir.1987). Few answers to jurisdictional questions "will be written in black and white." *Burger King,* 471 U.S. at 486 n. 29 (internal quotation omitted).

When it is established that a defendant has purposefully established minimum contacts with the forum state, the court must then consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *see also Dakota Indus. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389-90 (8th Cir. 1991) (applying same two-step analysis). In this analysis, the court may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute,""the plaintiff's interest in obtaining convenient and effective relief,""the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and "the shared interest of the several States in furthering fundamental substantive social policies." *Burger King,* 471 U.S. at 477 (*quoting World-Wide Volkswagen,* 444 U.S. at 292).

The only alleged contacts by defendants with the State of Arkansas are the telephone calls that were allegedly made by the plaintiff from Arkansas attempting to get into contact with them.

AO72A
(Rev. 8/82)

There is no allegation defendants initiated contact with the plaintiff in Arkansas or even were aware of the fact that plaintiff intended to travel to Arkansas on November 14, 2004.

Second, Bunch's claims against Rick Hoyt, the Fayetteville Police Chief, are subject to dismissal. A § 1983 complaint must allege that each defendant, acting under color of state law, deprived plaintiff of "rights, privileges or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. *DuBose v. Kelly*, 187 F.3d 999 (8th Cir. 1999). A claim of deprivation of a constitutional right cannot be based on a respondeat superior theory of liability. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In other words, Chief Hoyt cannot be held liable merely because he employed some of the alleged wrongdoers. There is no allegation Hoyt participated in the alleged unconstitutional conduct, condoned it, turned a blind eye to it, or facilitated it in anyway. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995).

### III. Conclusion

Accordingly, I recommend that the following claims be dismissed: (1) all claims against Scott Craig, Cherokee Nation Federal Marshal's Office; (2) all claims against Supervisor John Doe, Cherokee Nation Federal Marshal's Office; (3) all claims against Chad Smith, Chief of the Cherokee Nation; and (4) all claims against Rick Hoyt, Chief of Police, Fayetteville Police Department. These claims are subject to dismissal on the grounds they are frivolous and fail to state claims upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(i)- (iii) (in forma pauperis action may be dismissed on such grounds at any time).

By separate order the undersigned will direct service on the remaining defendants and rule on the motion to amend the complaint.

**Bunch has ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. Bunch is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of March 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)